FILED
2021 Jan-05  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DeMARQUEIS JOHNSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.:** |
| | ) | **2:20-cv-00853-MHH-HNJ** |
| WARDEN LEON BOLLING, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## SPECIAL REPORT

COME NOW Defendants Warden Leon Bolling, Officer Keller Speaks, Sgt. Roderick Gadson, Captain Errol Pickens, and Officer Corey Fox through undersigned counsel, and pursuant to this Court's order of July 24, 2020 (Doc. 9), hereby submit the following Special Report in response:

## PARTIES

1.      Plaintiff, DeMarqueis Dewayne Johnson ("inmate Johnson"), is an inmate with the Alabama Department of Corrections ("ADOC") and is currently incarcerated at Easterling Correctional Facility. Inmate Johnson was incarcerated at W.E. Donaldson Correctional Facility ("Donaldson") at all times material hereto.

2.      Defendant Leon Bolling, ("Warden Bolling") is employed with ADOC as a Warden at St. Clair Correctional Facility. Warden Bolling was assigned to Donaldson at all times material hereto.

3.     Defendant Errol Pickens, ("Captain Pickens") is employed with ADOC as a Captain at North Alabama Community Based Facility. Captain Pickens was assigned to Donaldson at all times material hereto.

4.     Defendant Roderick Gadson ("Sgt. Gadson") is employed with ADOC as a Correctional Sergeant at St. Clair Correctional Facility. Sgt. Gadson was assigned to Donaldson at all times material hereto.

5.     Defendant Keller Speaks ("Officer Speaks") is employed with ADOC as a Correctional Officer at Donaldson.

6.     Defendant Corey Fox ("Officer Fox") is employed with ADOC as a Correctional Officer at Donaldson.

## **DEFENDANT'S EXHIBITS**

1.    Exhibit A –      Institutional Records

2.    Exhibit B –      Affidavit of Warden Leon Bolling

3.    Exhibit C –      Affidavit of Warden Errol Pickens

4.    Exhibit D –      Affidavit of retired Warden Angela Miree

5.    Exhibit E –      Affidavit of Sgt. Roderick Gadson

6.    Exhibit F       Affidavit of Officer Keller Speaks

7.    Exhibit G       Affidavit of Officer Corey Fox

8.    Exhibit H –      Medical Records

## PLAINTIFF'S ALLEGATIONS

Inmate Johnson is incarcerated in Easterling Correctional Facility. He asserts on April 24, 2018, while incarcerated at Donaldson Correctional Facility, Correctional Officers Gadson, Speaks, and Fox assaulted him in the restrictive privileges unit. (Doc. 1 at 4). The Plaintiff had to be rushed to UAB Hospital, where he was diagnosed with broken ribs, broken vertebrae, and a collapsed lung. (*Id.*).

The Plaintiff alleges he was improperly placed in the restrictive privileges unit because none of his privileges had been revoked, nor had he been found guilty of violating any rules. (Doc. 1 at 4). However, the plaintiff seeks to have both disciplinary actions removed from his file. (*Id.*, at 5).

## STATEMENT OF FACTS

On April 24th, 2018 at approximately 3:25 p.m., Correctional Cadet Jasmine Thornton observed inmate DeMarqueis Johnson B/178713 with his penis exposed. (Exhibit A, Institutional Records, p.1). Cadet Thornton advised Correctional Officer Corey Fox of inmate Johnson's exposure of his penis. Officer Fox walked on the black top area, ordered inmate Johnson to come with him. Once off the black top, Cadet Thornton positively identified inmate Johnson as the inmate who exposed himself. Officer Fox advised Correctional Lieutenant Timothy Pope of the incident. Officer Fox escorted inmate Johnson to the infirmary for medical evaluation prior to being placed in Restricted Privilege unit. Medical evaluation was completed by

3

Director of Nursing, Registered Nurse Elizabeth Melton (Ex. A, Body Chart, p.4). Once medical evaluation was completed, Officer Fox escorted inmate Johnson to X-Unit for processing (Restricted Privilege Unit). Once in the corridor, Correctional Officer Roderick Gadson frisked searched inmate Johnson for contraband. No contraband or weapons was confiscated. Correctional Officer Roderick Gadson ordered inmate Johnson to remove his belt and go to cell X-42. Inmate Johnson complied with the instruction to remove his belt. Inmate Johnson stated that he was not going to a f**king cell that he had not did anything. The order to go to cell X-42 was repeated several times. Inmate Johnson refused each order. Officer Gadson utilized his state issued can of Saber Red and sprayed a single one second burst to the facial area of inmate Johnson. Inmate Johnson was ordered to lay on the floor but refused. Officer Fox subdued inmate Johnson to the floor utilizing a two on one take down technique. Inmate Johnson resisted and was combative. Inmate Jonson was ordered to cease his combative and resistive behavior. Inmate Johnson refused and continued being combative and resisting orders given to him. In an attempt to stabilize inmate Johnson, Officer Gadson quickly placed his right knee on the left side of inmate Johnson to assist with subduing inmate Johnson so handcuffs could be applied. Once inmate Johnson was handcuffed all use of force was ceased. Inmate Johnson was escorted to the infirmary for decontamination and medical evaluation. (Ex. A, Body Chart, p.5). Inmate Johnson did not submit a written

statement but did make the following statement to Correctional Sergeant Trenton Eads, that he was on the dip bar, exercising when he got off he could have accidently exposed himself. After he was escorted to X-Unit corridor he was swung on. Once medical decontamination was completed, per orders of Dr. Roy Roddam, inmate Johnson was transported to a free world medical facility for evaluation and treatment by Correctional Officer Corbin Tunstall and Geoffrey Griffin. At the time of this report inmate Johnson has been admitted to UAB Medical Center in Birmingham, Alabama. On April 28, 2018 at approximately 5:00 pm inmate Johnson returned to Donaldson Correctional Facility. ( Ex. A, p.1).

Warden Bolling testified that on April 24, 2018, inmate DeMarquies Johnson, AIS #178713, was observed by Cadet Jamie Thornton with his penis exposed. This is a violation of Administrative Regulation 403, Rule #923, Indecent Exposure / Exhibitionism / Lewd conduct. Inmate Johnson alleged that he was not supposed to be placed in the Restrictive Housing Unit. It is the policy of ADOC that if an inmate violates any type of rule, they can be assigned to the Restrictive Housing Unit. This Use of Force incident was investigated by Captain Terry Thomas on May 3, 2018. Captain Thomas' recommendation based on the investigation that the Use of Force was necessary and justified, when inmate Johnson refused to go into the Restricted Privilege Dorm. Officer Roderick Gadson used the lower level of force by spraying inmate Johnson in the facial area with his Saber Red. Inmate Johnson was ordered

to lay on the floor. Inmate Johnson still resisted the order. Officer's Corey Fox and Roderick Gadson used the necessary force to gain control of inmate Johnson (Exhibit B, Affidavit of Warden Bolling).

Warden Errol Pickens testified via affidavit: I was not involved in Inmate Johnson's incident; however, I did approve the two disciplinaries that were related to the incident that Inmate Johnson was involved in the above date. Inmate Johnson received disciplinaries for (Disciplinary WDCF-18-00746-1 / Rule Violation #923- Indecent Exposure/Exhibitionism/Lewd Conduct and Disciplinary WDCF-18-00746-2 / Rule Violation #925- Failure to obey a direct order of an ADOC Employee). Inmate Johnson was found guilty by the hearing officer on both disciplinaries. My responsibility is to approve or disapprove the findings and recommendations within (10) days of the hearing date and ensure that there are no due process violations. I approved both disciplinaries according to the information that was provided in the disciplinary module. I did not see where any area that his due process was violated, and all hearing officers have received certified training from our legal department, and they are responsible for knowing and following the procedures established by this Administrative Regulation. (Exhibit C, Affidavit of Warden Errol Pickens).

Defendant Angela Miree testified that she was not involved in any of the incident with Inmate Johnson. (Exhibit D, Affidavit of Retired Warden Angela Miree).

Defendant Gadson testified via affidavit:  On April 24, 2018, I, Correctional Sergeant Roderick Gadson was assigned as Correctional Officer at Donaldson Correctional Facility. On this date in question, I, Sergeant Gadson was assigned as a rover on X-side, (a Restricted Housing Unit). At approximately 4:00 pm, Correctional Officer Corey Fox escorted inmate DeMarqueis Johnson, B/178713, into the unit to be place into a restricted housing cell. I conducted a routine search of inmate Johnson to ensure there was no contraband on inmate Johnson's person. No contraband was discovered. Inmate Johnson then stated, "I'm not going into no f**king lockup cell because I didn't do anything." I gave inmate Johnson several loud direct orders to go into X-side and go in cell X-42. Inmate Johnson did not comply. I sprayed inmate Johnson in the facial area with a one second burst of Sabre red Crossfire. I then instructed inmate Johnson to lay down on the floor to be handcuffed. Inmate Johnson still did not comply. Inmate Johnson was taken down to the floor by Officer Fox. Inmate Johnson was still combative. To help gain control of inmate Johnson, I placed my right knee on the back area of inmate Johnson. Inmate Johnson was handcuffed to the rear and all force stopped immediately. (Exhibit E, Affidavit of Roderick Gadson).

Officer Speaks testified by Affidavit that he responded to a call for a supervisor and observed Gadson and Fox with Inmate Johnson. (Exhibit F, Affidavit of Keller Speaks).

Officer Kenneth Fox testified by affidavit: On April 24, 2018, I, Correctional Officer Corey Owen Fox, did attempt to place inmate DeMarqueis Johnson B/178713, in a cell in X unit after he was re-assigned due to committing an infraction. Inmate Johnson became defiant and erratic and failed to obey several direct orders given to him to enter his assigned cell. Inmate Johnson was administered Sabre Red chemical agent and then taken down to the floor and handcuffed. No further force was used on inmate Johnson. (Exhibit G, Affidavit of Corey Fox).

## LEGAL ARGUMENT

### Eighth Amendment: Excessive Force

In <u>Hudson v. McMillian</u> and <u>Whitley v. Albers</u>, the U.S. Supreme Court set the standards under which an Eighth Amendment excessive force claim must be analyzed. To succeed in proving correctional officers' use of force was unconstitutional, a plaintiff must show: (1) that subjectively, the defendants acted maliciously or sadistically to cause harm to the plaintiff; and (2) the plaintiff suffered injury that was objectively harmful enough to establish a constitutional violation. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992). In making this determination, the Court

considers the following five factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relation between the need for force and the amount of force actually used; (4) the threat reasonably perceived; and (5) any efforts to temper the severity of a forceful response.  Whitley v. Albers, 475 U.S. 312, 321 (1986).  Inmate Johnson's allegations omit the details of his conduct contained in the institutional records. The incident report indicates that Inmate Johnson engaged in lewd behavior which was subject to disciplinary consequences. (Exhibits A, B, C, and D).  Placement in the restricted unit pending disciplinary charges is consistent with regulations. (Ex. B). Inmate Johnson then resisted placement in the restricted unit, requiring officers to apply force, (Exs. E, F, G). Applying these factors to the above referenced facts and documented injuries, inmate Johnson cannot meet the objective component.

## Subjective Component

To establish that correctional officers acted with a sufficiently culpable state of mind, a plaintiff must show that force was applied "maliciously and sadistically to cause harm," amounting to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 320 (1986).  On the other hand, if "force was applied in a good faith effort to maintain or restore discipline," as it was here, then the officers acted correctly and there was no constitutional violation.  Hudson v. McMillian, 503 U.S. 1 (1992).

Inmate Johnson cannot show that subjectively any of the Defendants, Gadson, Speaks or Fox acted maliciously or sadistically to cause him harm. It is standard procedure to place inmates in restricted housing pending a disciplinary action (Ex. D). Inmate Johnson chose to protest the disciplinary charges by resisting the officers placing him in restricted housing. Inmate Johnson was guaranteed a hearing on the discipline charges (which he received) but he chose physical resistance instead. Given inmate Johnson's above referenced resistant and combative behavior, any alleged force was "applied in a good faith effort to maintain or restore discipline," Defendants acted correctly and there is no constitutional violation. Hudson v. McMillian, 503 U.S. 1 (1992). Thus, inmate Johnson's excessive force claim is without merit.

## Fourteenth Amendment Due Process Claims

Inmate Johnson raises "due process" challenges to the disciplinary charges and placement in restricted unit. Inmate Johnson was found guilty of the prison disciplinary. (Ex. C).  Loss of privileges and being placed in segregation does not implicate a protected liberty interest. See Ex parte Shabazz, 989 So. 2d 524,  527 (Ala. 2008).  Without a protected liberty interest, due process protections are not applicable.  See id.  Thus, Johnson's  "false charges" claim is without merit.  See id. ("Shabazz was not entitled to due-process protections, such as ensuring a valid chain of custody of evidentiary material, at his disciplinary hearing."). Admittedly,

prisoners do not shed all constitutional rights at the prison gate, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555 (1974), but " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " <u>Jones v. N. Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125 (1977) quoting <u>Price v. Johnston</u>, 334 U.S. 266, 285 (1948). Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. <u>Sandlin v. Conner</u>, 515 U.S. 472, 485, (1995). In <u>Conner</u>, the Court held that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" and that the "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody." <u>Id</u>.

Although "due process protections" are inapplicable in a situation where a protected liberty interest is at stake, Defendants assert that "some evidence" existed to support Johnson's guilt at the prison disciplinary.  All prison officials have to show to support a guilty prison disciplinary is "some evidence" to find that inmate in violation of a prison rule or regulation. <u>See Superintendent, Massachusetts Correctional Institution</u>, <u>Walpole v. Hill</u>, 472 U.S. 445 (1985). Because the prison produced "some evidence" of his guilt as it related to the prison disciplinary, Johnson's claims are due to be denied.

## Eleventh Amendment Immunity and Sovereign Immunity

To the extent inmate Johnson has named Defendants in their official capacity, they are absolutely immune from suit for damages. Walker-El v. Naphcare Med. Servs., Inc., 432 F.Supp.2d 1264, 1268 (S.D. Ala. 2006) citing Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998). The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."   The Amendment therefore not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizenry.  See Edelman v. Jordan, 415 U.S. at 663, 94 S. Ct. at 1347 and Hans v. Louisiana, 134 U.S. 1, 13-15, 10 S. Ct. 504 (1890). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit

against the State. Thus, Defendants are absolutely immune from damages liability and the claims against them in their official capacity are due to be dismissed.

## Qualified Immunity and State-Agent Immunity

Defendants, in their individual capacity, are also immune from suit by virtue of qualified immunity and state-agent immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dortch v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). As explained *infra,* Defendants' alleged acts or omissions have not violated any established constitutional or statutory rights. Further, Defendants' alleged acts or omissions consist of discretionary functions, and because their actions do not violate any clearly established constitutional or statutory rights, they are protected by qualified immunity. Pinkney v. Davis, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity). The Eleventh Circuit has also held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Dortch, 163 F.3d at 1295. In addition, Defendants

are entitled to state agent immunity to the extent inmate Johnson may have alleged any state law causes of action. <u>See</u> <u>Adams v Franklin</u>, 111 F. Supp.2d 1255(M.D. Ala. 2000); <u>Davis v Purcell</u>, 2014 WL 988596 (N.D. Ala).

## **<u>Respondeat Superior Liability is not applicable.</u>**

It is well established that supervisory officials are not liable under § 1983 for the alleged unconstitutional acts of their subordinates based on respondeat superior or vicarious liability. <u>See</u> <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003). Thus, inmate Johnson fails to state a claim against Warden Bolling, Warden Pickens and Warden Miree, to the extent he may be attempting to hold them liable based on a respondeat superior theory of liability.

Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  <u>Id.</u>  This connection may also be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.' <u>Id.</u> (<u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1105 (11th Cir. 1999)).  There is

no such evidence to that effect here. Therefore, inmate Johnson's claims against Warden Bolling, Warden Pickens and Warden Miree are subject to dismissal.

## CONCLUSION

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). This case is ripe for summary judgment because there is no genuine issue of material fact as to the Plaintiff, inmate Johnson's claims. Therefore, Defendants are entitled to judgment as a matter of law and inmate Johnson's claims are due to be dismissed.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL


/s/ Neva C. Conway
NEVA C. CONWAY (CON019)
Assistant Attorney General
Attorney for Defendants

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
334-242-7300 (T)
334-353-8400 (F)
Neva.Conway@AlabamaAG.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2021, I electronically filed the foregoing Special Report with the Clerk of the Court, using the CM/ECF system, and that I have further served a copy on the Plaintiff, by placing same in the United States Mail, postage prepaid, and addressed to the Plaintiff's last known address as follows:

> DeMarqueis Johnson
> AIS# 178713
> Easterling Correctional Facility
> 200 Wallace Drive
> Clio, AL 36017-2615

/s/ Neva C. Conway
OF COUNSEL