FILED

2021 Jul-13  AM 08:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| DeMARQUEIS JOHNSON,<br>AIS #178713 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:20-cv-00853-MHH-HNJ |
| | ) | |
| LEON BOLLING, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights during his incarceration at Donaldson Correctional Facility, in Bessemer, Alabama.[1] (Doc. 1).  He names as defendants Wardens Leon Bolling and Errol Pickens, and Officers Keller Speaks, Corey Fox, and Roderick Gadson.[2]  (Doc. 1 at 2-3). Plaintiff seeks compensatory damages and the removal of two disciplinary actions from his file.[3]  (Doc. 1 at 5).

---

[1]  Plaintiff now resides in Easterling Correctional Facility.  (Doc. 1 at 2).

[2]  The defendants identify Errol Pickens as a "Captain" and Roderick Gadson as "Sergeant."  (Doc. 24-3; Doc. 24-5).  Plaintiff also named Warden Angela Miree as a defendant.  (Doc. 1 at 2).  Warden Miree has not filed a waiver of service.  By affidavit, Miree states she is now retired.  (Doc. 24-4).  Her affidavit does not reflect any personal knowledge of the incident at issue here.  (Doc. 24-4). Plaintiff failed to request service on this defendant personally, or otherwise acknowledge the failure of Warden Miree to respond. On this basis, the undersigned shall recommend the court dismiss plaintiff's claims against Warden Miree without prejudice.

[3]  Although plaintiff also desires the named officers charged with first degree assault (Doc. 1 at 5), § 1983 does not provide for such relief.

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned Magistrate Judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). For the reasons set forth herein, the Magistrate Judge recommends that the court grant in part and deny in part the defendants' motion for summary judgment.

## I. Procedural History

On July 24, 2020, the undersigned Magistrate Judge entered an Order for Special Report directing the Clerk to forward copies of the complaint to the defendants and directing the defendants to file a special report addressing plaintiff's factual allegations. (Doc. 9). The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 9). The order advised plaintiff that, after he received a copy of the special report, he would have 21 days to file his initial disclosures pursuant to Rule 26(a)(1), Federal Rules of Civil Procedure.

On January 5, 2021, the defendants filed a special report, supplemented by affidavits and other evidence. (Doc. 24). On January 6, 2021, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 25). The undersigned also advised plaintiff of the consequences of any default or failure to comply with

Federal Rule of Civil Procedure 56.  (Doc. 25).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  After multiple extensions of time, plaintiff filed a response to the defendants' motion on July 8, 2021.  (Doc. 44).

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is on the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Unless plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning

3

an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts

Plaintiff alleges that on April 24, defendant Correctional Officers Gadson, Speaks, and Fox beat him in the hallway of the Restrictive Privileges Unit ("RPU"). (Doc. 1 at 4). Plaintiff explains he was exercising on a dip bar at the south side black top when Fox grabbed him and ordered him to follow Fox. (Doc. 44 at 2).

The defendants contend that on April 24, 2018,[4] Jasmin Thorton, a female correctional cadet, saw plaintiff with his penis exposed.[5]  (Doc. 24-2; Doc. 24-4). She notified Officer Fox, who advised non-party Lt. Pope of the incident.  (Doc. 24-1 at 1). Fox walked plaintiff to the office, where Thorton identified him as the offender.  (Doc. 44 at 2).  Fox then punched plaintiff in the face.  (Doc. 44 at 2).  Fox next escorted plaintiff to the infirmary for a body chart for placement in the RPU.[6]  (Doc. 24-1 at 4; Doc. 44 at 3).  While there, plaintiff told Lt. Pope that Fox had punched him.  (Doc. 44 at 3).  Fox next took plaintiff to the RPU for processing.  (Doc. 44 at 3).  Plaintiff alleges he was handcuffed prior to walking to the infirmary, and again when he left the infirmary.  (Doc. 44 at 3).

Plaintiff contends Gadson stated, "You know we 'bout to beat that ass," and Fox attempted to push his head into a wall.  (Doc. 44 at 3).  Gadson then punched plaintiff. (Doc. 44 at 3).  Plaintiff fell to one knee, and Gadson then kicked him in the ribs.  (Doc. 44 at 3).  Gadson told Speaks to "call it in."  (Doc. 44 at 3).  Speaks did so, then sprayed

---

[4]  The defendants' exhibits clarify that all relevant events occurred in 2018.  (Doc. 24-1 at 1).

[5]  Plaintiff states he did not know any female officer was present on the black top and no announcement was made that a female officer was present, as required.  (Doc. 44 at 2-3).  The only evidence of the conduct Thorton observed emanates from the affidavits of Bolling and Miree, who draw those facts from the incident reports.  (*See* Docs. 24-2; 24-4).

[6]  At that time, the nurse noted a small abrasion inside plaintiff's upper lip.  (Doc. 24-1 at 4; Doc. 24-8 at 1-2).

plaintiff in the face with Saber Red.[7]  (Doc. 44 at 3).  Gadson then kneed him in the back.  (Doc. 44 at 3).

In contrast, Gadson claims that when plaintiff arrived at the RPU, he conducted a routine search for contraband.  (Doc. 24-5).  Gadson then ordered plaintiff to go to cell X-42.  (Doc. 24-5).  Plaintiff refused, stating he had not done anything warranting placement in the RPU.  (Doc. 24-5).  According to Gadson, plaintiff failed to comply with multiple orders to proceed to cell X-42.[8]  (Doc. 24-5).  Gadson administered a one second burst of Saber Red to plaintiff's face.[9]  (Doc. 24-5).  He ordered plaintiff to lie on the floor to be handcuffed, but plaintiff continued to refuse to comply with instructions.[10]  (Doc. 24-5).  Fox took plaintiff to the floor.  (Doc. 24-5).  The defendants state plaintiff continued to resist and engage in combative behavior, despite commands to cease his conduct.  (Doc. 24-5; Doc. 24-7).  Gadson thus placed his right knee on plaintiff's back to subdue him so that plaintiff could be handcuffed.[11]  (Doc. 24-5).  Once the officer accomplished handcuffing plaintiff, all use of force ended. (Doc. 24-5).

---

[7]  Officer Speaks states by affidavit that his only knowledge of the incident constitutes seeing plaintiff handcuffed and escorted to the Health Care Unit.  (Doc. 24-6).

[8]  Plaintiff denies this, stating no one ordered him to go into X-block or a particular cell, and that the incident in question occurred in the hallway outside X-block.  (Doc. 44 at 3).

[9]  Plaintiff reiterates Speaks, not Gadson, sprayed him with Saber Red.  (Doc. 44 at 3).

[10]  Plaintiff alleges he had been handcuffed upon leaving the infirmary.  (Doc. 44 at 3).

[11]  The Use of Force report clarifies that Officer Gadson weighs approximately 300 pounds while plaintiff weighs 145 pounds.  (Doc. 24-1 at 3).

6

Plaintiff returned to the infirmary for decontamination and medical evaluation.[12] (Doc. 24-1 at 6).  After plaintiff was decontaminated, the prison doctor ordered plaintiff taken to UAB Hospital for treatment.[13]  (Doc. 24-8 at 6).  Plaintiff's diagnosed injuries included broken ribs, broken vertebrae, and a collapsed lung.  (Doc. 1 at 4).  UAB Hospital released plaintiff on April 27, 2018.  (Doc. 1 at 4).

UAB medical records reflect plaintiff had one mildly displaced vertebra and two bilateral vertebrae fractures in his lumbar spine.  (Doc. 24-8 at 10).  He also suffered a moderate-size, right pneumothorax, a small left pneumothorax,[14] very mild pneumomediastinum,[15] and a broken rib.  (Doc. 24-8 at 13-14).  Plaintiff returned to Donaldson on April 28, 2018, where he was housed in the infirmary until June 9, 2018, for "multiple traumatic injuries."  (Doc. 24-1 at 1; Doc. 24-8 at 26).  Plaintiff also

---

[12]  A second body chart, completed upon plaintiff's return to the infirmary, again noted the abrasion to plaintiff's upper lip, but no other injuries.  (Doc. 24-1 at 5).  However, a nursing form noted the cause of injury was "assault" and that plaintiff had a "red abrasion along [left] upper rib cage."  (Doc. 24-8 at 5).

[13]  Medical records reflect Dr. Roy Roddam ordered plaintiff taken to UAB to rule out rib fractures. (Doc. 24-8 at 25).

[14]  According to the Mayo Clinic website, "[a] pneumothorax is a collapsed lung. A pneumothorax occurs when air leaks into the space between your lung and chest wall. This air pushes on the outside of your lung and makes it collapse. A pneumothorax can be a complete lung collapse or a collapse of only a portion of the lung.   https://www.mayoclinic.org/diseases-conditions/pneumothorax/symptoms-causes/syc-20350367

[15]  Pneumomediastinum, also known as mediastinal emphysema, is a condition in which air is present in the mediastinum (the space in the chest between the two lungs). This can be caused by a traumatic injury or in association with pneumothorax or other diseases. https://www.hopkinsmedicine.org/health/conditions-and-diseases/pneumomediastinum

contends he suffered an eye injury from the Saber Red spray.  (Doc. 24-1 at 5; Doc. 44 at 3).

Non-party Captain Thomas investigated the use of force, and found it necessary and justified based on plaintiff's failure to comply with orders.  (Doc. 24-1 at 3).  That same report reflects plaintiff's claim that Fox and Gadson continued to slap and kick him while he was on the ground.  (Doc. 24-1 at 3).  Defendant Errol Pickens approved the finding of guilt on both disciplinary actions against plaintiff -- one for indecent exposure, and the other for failing to obey a direct order.  (Doc. 24-3; Doc. 30-3; Doc. 30-4).

### IV. Analysis

A. *Supervisory Liability*

Plaintiff does not state any claim against Warden Leon Bolling or Captain Errol Pickens.[16]  To the extent plaintiff attempts to sue Bolling or Pickens in their role as supervisors, those claims fail.  "Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability."  *Gray ex rel. Alexander v. Bostic,* 458 F.3d 1295, 1308 (11th Cir. 2006); *see also Keith v. DeKalb Cty, GA*, 749 F.3d 1034, 1047 (11th Cir. 2014).  Rather, a plaintiff must allege that the supervisor either personally participated in the alleged wrongdoing, or (1) instituted a custom or policy which resulted in a violation of plaintiff's constitutional

---

[16]  Plaintiff also failed to allege any action or inaction by Warden Angela Miree.

rights; (2) directed his subordinates to act unlawfully; or (3) failed to prevent his subordinates from acting unlawfully when he knew they would. *Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007). To prove a custom or policy caused a constitutional violation, a plaintiff must allege either multiple incidents, *Piazza v. Jefferson County, Ala.*, 923 F.3d 947, 957 (11th Cir. 2019); a "persistent and widespread practice," *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004); or that an affirmative custom or policy "played a role" in the deprivation. *Cottone v. Jenne*, 326 F.3d 1352, 1362 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

Here, plaintiff alleges no facts which could support a claim for supervisory liability against either Bolling or Pickens. These two defendants warrant summary judgment in their favor.

B. *Excessive Force*

Plaintiff brings a claim for excessive force, in violation of the Eighth Amendment to the United States Constitution, against defendants Speaks, Fox, and Gadson.[17]

---

[17] Plaintiff fails to allege in what capacity he brought his claims against each of these defendants. The undersigned construes the claims as brought against the defendants in their individual capacities only, as the doctrine of sovereign immunity bars the claims against the defendants in their official capacities. *Burke v. Bowns*, 653 F.App'x 683, 688 n.5 (11th Cir. 2016) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69–72 (2001)); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (A suit against a state official in his official capacity is a suit against the State itself); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (the Eleventh Amendment prohibits a suit against the State absent the State's consent to the suit).

Courts analyze excessive force claims under the standards set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). The analysis contains both a subjective and an objective component: (1) whether "the 'officials act[ed] with a sufficiently culpable state of mind,'" and (2) "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (*quoting Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991) (alterations in original)).

The Supreme Court held that under the subjective part of the analysis, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Factors that courts should consider when evaluating whether force used was excessive include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id.*; *see also Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

Under the objective component, claims based on *de minimis* uses of physical force by prison guards are not cognizable; rather they must involve the type of force that is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10. In determining whether the amount of force used against an inmate was *de minimis*, a court may consider the extent of the injuries suffered by the inmate. *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002). However, the core judicial inquiry is "not whether a certain quantum

of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*quoting Hudson*, 503 U.S. at 7).

Thus, a court must consider the "nature of the force" used, specifically "whether it was nontrivial" and "applied maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39. Applying the *Hudson* factors, the undersigned finds genuine issues of material fact exist for each factor. According to plaintiff, no need for force existed, he did not pose a threat to any prison officials, and his injuries demonstrate the force used was excessive. According to the defendants, plaintiff refused to comply with direct orders, necessitating the use of some amount of force, and the use of force ceased one plaintiff was restrained.

More specifically, plaintiff claims Fox punched him prior to taking him to the infirmary on the first occasion, and Gadson, Speaks, and Fox subsequently beat him in the hallway of the RPU on April 24, 2018. (Doc. 1 at 4; Doc. 44 at 2-3). In contrast, Gadson and Fox assert they used only the force necessary to secure plaintiff after he failed to comply with multiple orders. (Doc. 24-5; Doc. 24-7). Although Speaks alleges his only knowledge of the incident ensued when he saw plaintiff handcuffed and escorted to the infirmary by Fox (Doc. 24-6), that statement contradicts plaintiff's claim that Speaks took part in the attack. (Doc. 1 at 4).

Plaintiff's sworn allegations suffice to survive summary judgment. "[W]hen conflicts arise between the facts evidenced by the parties," the court must "credit the

11

nonmoving party's version." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (emphasis omitted); *see also Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (holding a verified complaint must be treated as testimony for purposes of summary judgment). The defendants' sworn statements that they used only the force necessary---and that all force ceased when plaintiff was handcuffed---cannot be reconciled with plaintiff's verified claim that he was already handcuffed and that the officers beat him, as assessed in combination with the extent of his injuries.[18] *See e.g., Skrtich,* 280 F.3d at 1302 (holding rib fractures, back injuries, and abdominal injuries requiring hospitalization and rehabilitation "could hardly be the result of a *de minimus* application of force.").

A district court may not undertake credibility determinations on a motion for summary judgment. *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006). Even if a district court "believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices," *Miller*, 458 F.3d at 1256, because credibility determinations and the weighing of evidence "are jury functions, not those of a judge," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Should a reasonable trier of fact believe plaintiff's version of events, the averred

---

[18]   As previously noted, the Use of Force report (Doc. 24-1 at 3), remarks that Gadson weighs approximately 300 pounds, while plaintiff weighs about 145 pounds. To the extent the defendants attribute plaintiff's injuries solely to this weight differential, whether a non-malicious use of force by Gadson could cause plaintiff's injuries raises a question of fact not appropriate for resolution on summary judgment. Similarly, under *Hudson*, 503 U.S. at 8, the trier of fact must be decide whether "the 'officials act[ed] with a sufficiently culpable state of mind.'"

evidence could support a finding of excessive force against defendants Fox, Gadson, and Speaks.

Considered in the light most favorable to the non-moving party, the defendants' motion for summary judgment warrants denial on plaintiff's Eighth Amendment excessive force claim against Fox, Gadson, and Speaks.  However, plaintiff does not allege Pickens and Bolling played any role in the April 24, 2018, incident, and therefore fails to state a claim for excessive force against those defendants.

### C.  Qualified Immunity

The defendants assert that, in their individual capacities, they merit entitlement to qualified immunity.  (Doc. 24 at 13).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (*quoting Lane v. Franks*, 573 U.S. 228, 243 (2014)).  To receive the protection of qualified immunity, a government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004).  The parties here do not dispute the defendants were acting within their discretionary authority during the relevant time.

Thus, the court turns to the considerations of first, "whether plaintiff's allegations, if true, establish a constitutional violation," and second, if a constitutional violation occurred, "whether the right was clearly established."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  However, "[i]n this Circuit, a defense of qualified

immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skritch*, 280 F.3d at 1301.

Because the issue of qualified immunity turns on the reasonableness of the application of force in the first place, which wholly depends on the circumstances surrounding the use of force, the undersigned cannot find Fox, Gadson, and Speaks warrant entitlement to qualified immunity at this time.

### C. Due Process

Plaintiff also attempts to challenge the disciplinary hearing findings. (*See* Docs. 30-3; 30-4). Such a claim falls within the Fourteenth Amendment's procedural due process guarantee. The Fourteenth Amendment Due Process Clause protects prisoners from deprivations "of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, the Due Process Clause does not establish a "liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quotation omitted). Based on plaintiff's allegations, the only named defendant against whom such a claim could be brought is Warden Pickens, who approved the disciplinary findings.

Procedural due process for prisoners facing disciplinary actions requires: "(1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence,

when consistent with institutional safety and correctional goals." *Nolley v. Warden, Macon State Prison*, 820 F. App'x 845, 856 (11th Cir. 2020) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999)); *see also Wolff*, 418 U.S. at 563–66.

Here, the record clearly portrays that the facility afforded plaintiff the "specific hearing procedures that prison disciplinary panels must comply with to satisfy the standard of procedural due process in the prison setting." *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing *Wolff*, 418 U.S. at 556). Plaintiff does not suggest otherwise. Rather, plaintiff claims he should not have been brought to the RPU in the first place because he had not been found guilty of any rule violation. (Doc. 1 at 4). However, prisoners have extremely limited rights concerning where they are housed. *See e.g., Sandin*, 515 U.S. at 485; *Anthony v. Warden,* 823 F. App'x 703, 70-08 (11th Cir. 2020); *Holt v. Givens*, 757 F. App'x 915, 922 (11th Cir. 2018). Assignment to the RPU, standing alone, does not invoke the Due Process Clause. *Sandin*, 515 U.S. at 485-87 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."); *Rogers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998).

Moreover, no constitutional right exists against being falsely accused. *See Collins v. King*, 743 F.2d 248, 254 (5th Cir. 1984) ("If the disciplinary proceeding was otherwise fair and adequate, the opportunity it afforded [plaintiff] to clear himself of misdeeds which he did not commit sufficed."). In other words, a false report does not violate any constitutional right. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986)

(holding inmates have no constitutional guarantee against being falsely accused of conduct which may result in the deprivation of a protected liberty interest.).  The disciplinary process itself, rather than the underlying facts, provides the source of constitutional protections.  A prisoner may challenge false charges and testimony, and subject them to examination, at the disciplinary hearing, which constitutes all process the constitution requires.  *See Wolff*, 418 U.S. at 563–66 (1974); *Collins*, 743 F.2d at 253-54.

The evidence of record demonstrates plaintiff received each of the constitutionally mandated protections, and plaintiff does not claim otherwise.  The undersigned therefore recommends the court grant the defendants' motion for summary judgment on plaintiff's procedural due process claim.

## V. Recommendation

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** the court **DISMISS** plaintiff's claims against Angela Miree **WITHOUT PREJUDICE**.

The Magistrate Judge further **RECOMMENDS** the court **GRANT** the defendants' motion for summary judgment (Doc. 24) as to plaintiff's claims for violations of his due process rights, and as to his excessive force claims against defendants Bolling and Pickens.

The Magistrate Judge further **RECOMMENDS** the court **DENY** the defendants' motion for summary judgment (Doc. 24) as to plaintiff's excessive force

claims against defendants Gadson, Speaks, and Fox, and **REFER** those claims to the undersigned Magistrate Judge for further action.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

Upon receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.

Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DONE** this 13th day of July, 2021.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE